708 S.E.2d 742

In the Matter of William Barney WEEMS, III, Respondent.

No. 26946.

Supreme Court of South Carolina.

Submitted Feb. 17, 2011.
Decided March 21, 2011.

Lesley M. Coggiola, Disciplinary Counsel, and Barbara M. Seymour, Deputy Disciplinary Counsel, both of Columbia, for Office of Disciplinary Counsel.

S. Jahue Moore, of West Columbia, for Respondent.

## DEFINITE SUSPENSION

PER CURIAM.

In this attorney disciplinary matter, respondent and the Office of Disciplinary Counsel have entered into an Agreement for Discipline by Consent (Agreement) pursuant to Rule 21, RLDE, Rule 413, SCACR. In the Agreement, respondent admits misconduct and consents to a definite suspension of up to two years, an indefinite suspension, or disbarment, with conditions. We accept the Agreement and suspend respondent from the practice of law in this state for one year, order restitution, and place conditions on his resumption of the practice of law. The facts, as set forth in the Agreement, are as follows.

### *FACTS*

Respondent operated a solo practice with an emphasis on real estate closings. He contracted with Alan and Teren Pruitt, of North American Title Company (NATC), as agent for First American Title Insurance Company, to write title insurance for his closings and do clerical work. Neither of the Pruitts was licensed to practice law. NATC leased office space adjoining respondent's office and its administrative staff prepared settlement statements and other closing documents for respondent's clients under respondent's supervision.

Respondent also delegated to NATC the responsibility of disbursing funds from his trust account. The trust account checks were prepared by NATC employees, who were given authority to sign them with respondent's signature stamp. Although it was the practice that only respondent's signature would be used on trust account checks, the Pruitts were both given signatory authority on respondent's trust account. In addition, Mr. Pruitt served as bookkeeper for respondent's law practice. Respondent did not personally conduct monthly reconciliations, nor did he adequately review monthly bank statements and reconciliations of his trust account.

In November 2007, respondent closed his law office as a result of the impact of the failing economy on the real estate industry. At the time, there was approximately $121,000 in one client trust account (BB & T account) and approximately

$8,000 in another (Wachovia account). Respondent had an accounting of the funds in the Wachovia account, but did not have an accurate accounting of the funds in the BB & T account. In 2008, respondent changed his South Carolina Bar membership status to inactive and moved out of state to obtain his LLM degree.

When respondent closed his law office, he left his client files, trust account records, blank checks, and signature stamp with NATC. He delegated to the Pruitts the responsibility of disbursing the funds remaining in the trust accounts and issuing the remaining title insurance policies. Although respondent was in frequent telephone contact with Mr. Pruitt, he did not review disbursement checks, trust account records, or financial reports.

In November 2007, over 1,000 checks were written from the BB & T account payable to respondent's law firm and marked in the memo line as excess recording fees. The checks totaled approximately $21,500, which represented the positive balances on most of respondent's client ledgers at the time; however, there is no documentation to show respondent was entitled to those funds as excess recording fees or for any other purposes. After deposit of those funds into respondent's law firm operating account, three checks totaling that same amount were issued from the account to NATC. This was done with respondent's signature stamp, but not with his permission.

In April 2008, someone on behalf of NATC used respondent's signature stamp to withdraw $110,000 from the BB & T account and deposit into an account outside respondent's control or access. At the time the funds were removed from the BB & T account, respondent had approximately $59,000 in outstanding checks dated between January 24, 2005, and April 10, 2008. As a result of the removal of the $110,000 from the BB & T account and the subsequent presentment of several outstanding checks, the account was overdrawn and an insufficient balance remained to cover the other outstanding checks.

Because respondent failed to conduct monthly reconciliations or adequately review monthly bank statements and reconciliations of the BB & T account, he did not discover the removal of the $21,500 in November 2007 or the removal of

the $110,000 in April 2008. Likewise, respondent did not discover the shortfall that these transactions left in the account until notice of overdraft was sent to the Commission on Lawyer Conduct by BB & T.

Respondent has taken legal action and other steps to obtain documentation from Mr. Pruitt regarding disbursement of the funds removed from the account and the identity of the remaining funds. However, Mr. Pruitt has not provided sufficient documentation to verify that disbursed funds have been delivered to the appropriate payees or to account for undisbursed funds.[1] At the time of the execution of the Agreement, there remained outstanding checks written on the BB & T account, with insufficient funds on deposit to cover them. Respondent lacks the financial resources to make his account whole, but acknowledges it is his responsibility to do so, regardless of whether he can secure those funds from NATC or Mr. Pruitt.

At the time of the execution of the Agreement, respondent also remained unable to account for the portion of the funds removed from the BB & T account that are not associated with outstanding checks. Respondent acknowledges it is his responsibility to identify the clients and/or third parties to whom those funds belong and to ensure those funds are paid, regardless of whether he can secure those funds from NATC or Mr. Pruitt.

Respondent further acknowledges it is his responsibility to account for the $21,500 removed from the BB & T account in November 2007 as excess recording fees and that he is required to reconcile the account, including a complete review of his settlement statements and disbursement records, to determine what portion of those funds, if any, must be reimbursed to clients.

Finally, respondent acknowledges it is his responsibility to locate or reconstruct the accounting of the approximately $80,000 remaining in the Wachovia account and that he is required to secure those funds or replace them and ensure they are appropriately disbursed. If, after due diligence,

---

1. Respondent has resolved his civil lawsuit against Mr. Pruitt with an agreement that Mr. Pruitt will provide a complete and accurate accounting of funds.

respondent is unable to locate the payees for identified funds, he understands he must deliver those funds in accordance with the Uniform Unclaimed Property Act, S.C.Code Ann. § 27–18–10 et *seq.* (2007 & Supp.2010). If, after due diligence, respondent is unable to identify the proper payee of funds, he understands he must deliver those funds to the Lawyers' Fund for Client Protection.

## *LAW*

Respondent admits that by his conduct he has violated the following provisions of the Rules of Professional Conduct, Rule 407, SCACR: Rule 1.3 (a lawyer shall act with reasonable diligence and promptness in representing a client); Rule 1.15 (a lawyer shall hold property of clients that is in a lawyer's possession in connection with a representation separate from the lawyer's own property, in a separate account maintained in the state where the lawyer's office is situated, and the property shall be identified as such and appropriately safeguarded; complete records of such account funds and other property shall be kept by the lawyer; a lawyer shall comply with Rule 417, SCACR; a lawyer shall deposit into a client trust account unearned legal fees and expenses that have been paid in advance, to be withdrawn by the lawyer only as fees are earned or expenses incurred); Rule 1.16 (a lawyer may withdraw from representation of a client in certain situations, but must take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee or expense that has not been earned or incurred); and Rule 5.3 (a lawyer who possesses managerial authority in a law firm must take reasonable efforts to ensure the firm has in effect measures giving reasonable assurance a non-lawyer's conduct is compatible with the professional obligations of the lawyer, must make reasonable efforts to ensure the non-lawyer's conduct is compatible with the professional obligations of the lawyer, and shall be responsible for conduct of the non-lawyer in violation of the Rules of Professional Conduct if the lawyer orders or, with knowledge of the specific conduct, ratifies the conduct or knows of the conduct at a time when its consequences can be

avoided or mitigated but fails to take reasonable remedial action).

Respondent also admits he has violated Rule 7(a)(1) (it shall be a ground for discipline for a lawyer to violate the Rules of Professional Conduct or any other rules of this jurisdiction regarding professional conduct of lawyers) of the Rules for Lawyer Disciplinary Enforcement, Rule 413, SCACR. Finally, respondent acknowledges he failed to comply with the financial recordkeeping requirements of Rule 417, SCACR.

## CONCLUSION

We accept the Agreement for Discipline by Consent and suspend respondent from the practice of law in this state for one year from the date of this opinion. Within sixty days of the date of this opinion, respondent shall enter into a restitution plan with the Commission on Lawyer Conduct to repay the $131,500 removed from the BB & T account.[2] If, by the date of this opinion, respondent has not been able to identify the clients for whom funds were held in trust, he will make his payments to the Lawyers' Fund for Client Protection. Should respondent return to the active practice of law, he must notify the Commission on Lawyer Conduct in writing and begin quarterly reporting of his trust account(s) with the Commission for a period of two years.[3]

Within fifteen days of the date of this opinion, respondent shall file an affidavit with the Clerk of Court showing that he has complied with Rule 30, RLDE, Rule 413, SCACR.

**DEFINITE SUSPENSION.**

---

**2.** The parties agree that some portion of these funds may have been properly paid by North American Title Company or Mr. Pruitt. Any such funds may be deducted from the restitution amount upon respondent's delivery of complete and adequate documentation to the Commission on Lawyer Conduct.

**3.** Respondent has completed the Legal Ethics and Practice Program Ethics School, which, at the time he attended, included two hours of training on trust account management.